William L. Mauk (ISB No. 1825)
Joseph C. Miller (ISB No. 7485)
MAUK MILLER & HAWKINS, PLLC
600 E. Riverpark Ln., Ste. 210
Boise, ID  83706
Tel:     (208) 287-8787
Fax:     (208) 287-8788
e-mail:  office@idahojustice.com

Attorneys for Plaintiff

## IN THE DISTRICT COURT OF THE UNITED STATES

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LORI RYAN,<br><br>      Plaintiff,<br><br>vs.<br><br>THE INTERNET TRUCKSTOP LLC,<br> dba TRUCKSTOP.COM,<br> a Delaware Corporation,<br><br>      Defendant. | Case No.<br><br>**CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff LORI RYAN, by and through her attorney of record, Joseph C. Miller, of the firm MAUK MILLER & HAWKINS, PLLC, and by way of cause of action against the above-captioned Defendant THE INTERNET TRUCKSTOP LLC, dba TRUCKSTOP.COM, a Delaware corporation ("Truckstop" or "Defendant"), complains and alleges as follows:

### NATURE OF CLAIM

1. This is an action for equitable and legal relief and monetary damages brought by Plaintiff against Defendant, her former employer. Plaintiff seeks redress for the following wrongs done to her by Defendants: wrongful termination in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et. seq.*, ("FMLA"), and breach of the covenant of good faith and fair dealing, all in violation of public policy.

## PARTIES

2. Plaintiff at all times relevant hereto was, and is now, an adult female citizen of the United States and a resident of the State of Idaho, residing in Boise, Ada County.

3. At the time this action accrued Plaintiff was an employee of Defendant within the meaning of 29 U.S.C. § 2611(2) and a person subject to the protections of the FMLA.

4. Defendant is now, and at all times relevant hereto was, a business incorporated, under the laws of the State of Delaware and operating under the laws of the State of Idaho.

5. Defendant maintains its principal place of business and employment records relevant to this action in New Plymouth, Idaho. Two of Defendant's managers live in New Plymouth, Idaho.

6. At the time this action accrued, Defendant was Plaintiff's employer within the meaning of 29 U.S.C. § 2611(4).

7. All wrongful acts and omissions attributable to the individuals named or referenced herein are imputable to and the legal responsibility of the Defendant under principles of agency, *respondeat superior*, and federal law authorizing imputation of such responsibility.

## JURISDICTION AND VENUE

8. The wrongful termination alleged herein was committed in this judicial district during the period Plaintiff was employed by and worked for Defendant in this judicial district.

9. Jurisdiction is conferred on this court pursuant to 29 U.S.C. § 2617, as well as 28 U.S.C. § 1331 pertaining to civil actions arising under the laws of the United States.

10. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that the Defendant has significant contacts with this district, Plaintiff resides within the district, and the events giving rise to this cause of action occurred in this district.

## STATEMENT OF FACTS

11. Plaintiff was hired by Defendant on May 1, 2017 and was employed by Defendant at Defendant's office in Boise, Idaho until her termination in January 2019.

12. In 2018, Plaintiff was employed as an Expansion Sales Growth Executive II, earning a base salary of $41,600.00 per year, plus commissions. In 2018, Plaintiff's total

earnings (base plus commissions) were just under $102,000.00.  Plaintiff was a top sales producer at Defendant.

13. Toward the end of 2018, Defendant offered, and Plaintiff accepted a new position of Senior Sales Executive Account Manager III in Strategic Growth Expansion Sales, beginning on January 1, 2019.  Along with that new position, Plaintiff was promised an increased salary of $57,200.00 base, plus commissions with a minimum potential salary of $97,000.00.

14. Plaintiff was offered this new position because she was a top sales producer for Defendant.

15. Plaintiff has suffered from lupus for many years, which is a serious health condition as defined by the FMLA, 29 U.S.C. § 2611(11).  Plaintiff made Defendant aware of her serious health condition when she was hired.

16. Plaintiff's lupus symptoms can come and go but can include unexplained fevers, aching and swollen joints, prolonged and extreme fatigue, sharp chest pain when breathing, and skin rashes.

17. Plaintiff's lupus often interfered with her ability to perform her duties and sometimes made it impossible for her to perform the functions of her position at Defendant.

18. Plaintiff's lupus and associated symptoms got worse in late 2018, requiring Plaintiff to seek intermittent time off through the FMLA to cover anticipated work absences for medical appointments, treatment, and recuperation.

19. In late 2018, Defendant utilized an outside provider, Lincoln Financial Group ("Lincoln"), to administer, among other things, FMLA requests.  Although the requests were administered by Lincoln, Defendant retained the final say over whether the FMLA requests were granted.

20. In late October or early November 2018, Plaintiff informed her supervisor, Morgan Strasser ("Strasser") that she needed to apply for intermittent FMLA time off because of her worsening lupus symptoms.

21. Plaintiff told Strasser that she would need to occasionally leave work for doctor's appointments and treatments and would sometimes need to stay home if her symptoms were too severe.

22. Strasser responded by getting angry with her and telling her he didn't

believe she actually had lupus.

23.     In late October or early November 2018, Plaintiff went through the required procedures to apply for FMLA through Lincoln.

24.     When Lincoln contacted Strasser about Plaintiff's requests for FMLA, Strasser made it very difficult for Plaintiff to get her request approved, requiring her to go back to her treating doctor several times for different language from the doctor, verifying her need for the FMLA time off.  This despite the fact Plaintiff had already provided medical evidence to support her request that Lincoln deemed sufficient.

25.     In mid-November 2018, Plaintiff was informed her FMLA request would be approved and she began taking intermittent time off for incapacity to work and for treatment.

26.     On December 12, 2018, Plaintiff received a letter from Lincoln stating that her FMLA request had been approved for the period of November 12, 2018, through November 19, 2018, and that another period from November 20, 2018, through May 11, 2019, was pending approval. (S*ee* Exhibit A, attached.)

27.     On December 20, 2018, Plaintiff received another letter from Lincoln stating that her FMLA request had been approved for the entire period of November 12, 2018, through May 11, 2019.  (*See* Exhibit B, attached.)  That letter approved her for up to eight hours of absence five times every week for incapacity to work, and for up to two hours of absence once each week for medical treatment.

28.     On December 24, 2018, Plaintiff received another letter from Lincoln again stating her entire period of FMLA time off had been approved and showing the specific instances she had used approved FMLA time off to that point.  (*See* Exhibit C, attached.)

29.     Once Lincoln approved Plaintiff's request for FMLA, Strasser began taking sales accounts away from Plaintiff.  Specifically, he took away all her lucrative, high-dollar accounts.  When Plaintiff confronted him about this, he responded, "I assumed you would be absent 60% of the time on your FMLA so I took away 60% of your accounts."  He later told Plaintiff, "I didn't think you'd be back after your FMLA."

30.     Plaintiff continued to use FMLA intermittent time off for situations of incapacity or treatment appointments though December 2018 and early January 2019.

31.     On January 7, 2019, Michelle Berard ("Berard"), a Human Resources representative at Defendant, prepared a letter intended to inform Plaintiff that Defendant

**CIVIL COMPLAINT AND DEMAND FOR TRIAL - 4 of 9**

was terminating Plaintiff's employment. The letter stated no cause for the employment termination.

32. On January 8, 2019, Berard sent Plaintiff an e-mail expressing a desire to meet with Plaintiff and Strasser that same day, but since she had not been able to reach Plaintiff, she was scheduling a meeting with Plaintiff for the next day, January 9, at 9:00 a.m. (*See* Exhibit D, attached.) However, Plaintiff had already left for the day for a doctor's appointment and did not check her e-mail after she left and did not see this e-mail until after her employment was terminated.

33. On January 9, still unaware of Berard's e-mail, Plaintiff e-mailed Strasser at 7:47 a.m. to let him know she would be out that day on FMLA. She also informed him that her phone was broken so she was e-mailing him from her daughter's iPad and e-mail account. (*See* Exhibit E, attached.)

34. On January 9, Berard sent Plaintiff the previously prepared letter dated January 7, 2019, informing Plaintiff that her employment with Defendant was terminated. (*See* Exhibit F, attached.)

35. Plaintiff was still approved for FMLA when her employment was terminated.

36. Plaintiff's employment with Defendant was terminated because of her absences from work for the purpose of treatment for a serious health condition, which absences were approved pursuant to the FMLA.

## INCORPORATION

37. Plaintiff incorporates paragraphs 1 through 36 of this complaint in each of the claims for relief stated below.

## COUNT I
## VIOLATION OF THE FMLA

38. The Prohibited Acts provisions of the FMLA, 29 U.S.C. § 2615, declare that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

39. These Prohibited Acts provisions further declare that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

40. Pursuant to the Enforcement provisions of the FMLA, 29 U.S.C. §

2617(a)(1), any employer who violates section 2615 of the FMLA shall be liable for damages incurred by the affected employee.

41. Pursuant to the Enforcement provisions of the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii), the affected employee shall be entitled to an additional amount of liquidated damages unless the violating employer proves that its acts and omissions in violation of 29 U.S.C. § 2615 were done "in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation."

42. At all times pertinent to this action, Plaintiff was lawfully exercising, attempting to exercise, and/or availing herself of the rights, protections and obligations afforded her under the FMLA.

43. Defendant's acts and omissions taken against Plaintiff, including but not limited to interfering with her access to and exercise of protected medical leave, the involuntary and retaliatory termination of her employment, and other misconduct described herein, constitute a violation of the FMLA, 29 U.S.C. § 2615(a), and entitle Plaintiff to recover damages as provided at 29 U.S.C. § 2617(a)(1)(A)(i) in such amounts as will be proven at trial.

44. Defendant's acts and omissions taken against Plaintiff as described herein were willful and Defendant did not act in good faith in taking doing said acts and omissions against Plaintiff. Further, Defendant did not have reasonable grounds for believing that said acts and omissions were not a violation of 29 U.S.C. § 2615, entitling Plaintiff to recover damages as provided at 29 U.S.C. § 2617(a)(1)(A)(iii) in such amounts as will be proven at trial.

## COUNT II
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

45. While employed by Defendant, Plaintiff was an "at-will" employee.

46. An "at-will" employment relationship nevertheless is an employment contract.

47. There is an implied covenant of good faith and fair dealing in the employment-at-will contract.

48. Any action by either party which violates, nullifies or significantly impairs any benefit of the employment-at-will contract is a violation of the implied-in-law covenant.

49.     The right to apply for and use time off pursuant to the FMLA is a benefit of the employment-at-will contract granted to Plaintiff by federal statute and incorporated into the employment-at-will contract through Defendant's employee handbook and/or employee policies and procedures.

50.     Defendant's acts and omissions taken against Plaintiff described herein constitute a violation, nullification, or significant impairment of the benefits guaranteed to Plaintiff in her employment-at-will contract, constituting a breach of the covenant of good faith and fair dealing and causing damages to Plaintiff in such amounts as will be proven at trial.

## DAMAGES

51.     The following allegations are incorporated by reference as part of each count, claim and cause of action stated in this complaint and any amendment thereto.

52.     As the direct and proximate cause of Defendant's discriminatory and other unlawful conduct, Plaintiff has suffered, and unless and until this court grants relief, will continue to suffer substantial monetary damage, mental anguish and other loss, tangible and intangible, economic and compensatory, in an amount not less than $75,000, for which she seeks full recovery, all and part.

53.     Among other things, Plaintiff seeks recoveries and relief, as allowed by law, for the following:

 a. Lost wages, lost benefits, and future damages;
 b. Loss of bonus pay;
 c. Monetary losses sustained as a direct result of this violation;
 d. Interest on lost wages, bonuses, and benefits;
 e. Liquidated damages equal to all lost wages, bonuses, benefits, and the interest accrued thereon;
 f. Lost employment benefits of every character;
 g. Emotional distress, anxiety, and mental anguish;
 h. Loss of reputation;
 i. Disruption of her career; and
 j. Incidental and consequential losses.

54.     The conduct of Defendants described herein was willful, intentional, knowing, malicious, reckless, and in extreme deviation from appropriate and acceptable

standards, thereby entitling Plaintiff to awards of exemplary, punitive, and/or liquidated damages, as allowed by law.

## EQUITABLE RELIEF

55. In certain respects, Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and equitable relief is the only means of securing full and adequate relief.

56. The facts and circumstances giving rise to this action, and the conduct which is threatened to occur in the future justifies this court in granting appropriate equitable relief, pursuant to 29 U.S.C. § 2617.

## ATTORNEY FEES

57. As a consequence of the claims stated herein, Plaintiff has been required to retain the firm of Mauk Miller & Hawkins, LLC, to prosecute this action, and has incurred, and will continue to incur, attorney fees and costs. Pursuant to 29 U.S.C. 2617(a)(3), Rule 54 F.R.C.P., and all other comparable provisions of the laws of the United States affording such awards, Plaintiff is entitled to an award of her attorney fees and costs incurred in prosecuting this action.

## RESERVATION OF RIGHTS

58. Plaintiff reserves her right to amend this complaint as discovery requires and to conform the complaint to the evidence at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this court enter judgment in her favor and order that Defendants compensate Plaintiff in a dollar amount to be proven at trial for the following damages:

1. For all her actual economic losses and damages, past and future, including back pay, front pay, bonuses, income loss and benefit loss in the minimum amount of $75,000, or such greater amount as shall be proven at trial;

2. For an award of interest on all lost income and benefits;

3. For liquidated damages in an amount equal to all lost income and benefits plus the interest accrued thereon;

4. For general and compensatory losses and damages in the minimum amount of $75,000, or such greater amount as shall be proven at trial;

5. For additional equitable relief, including ordering Defendants to take

affirmative action as this court deems appropriate based on the proof at trial or at a proper post-judgment hearing regarding such relief;

      6.      For an award of all Plaintiff's costs and reasonable attorneys' fees incurred in prosecuting this action and in all proceedings related thereto; and

      7.      For such other relief as the court may deem proper and just.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by a jury of no less than twelve persons on each of the claims made in this complaint, pursuant to Rule 38, F.R.C.P.

DATED this 25th day of June, 2020.

                                    **MAUK MILLER & HAWKINS, PLLC**

                                    _____
                                    Joseph C. Miller
                                    Attorney for Plaintiff